UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARNELL S.[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-0288-SEB-MJD |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Claimant Darnell S. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). See 42 U.S.C. § 423(d). Judge Sarah Evans Barker has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 8.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **AFFIRM** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB in December 2019, alleging an onset of disability as of November 6, 2017. [Dkt. 6-7 at 4.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Jason Miller ("ALJ") on June 21, 2021. [Dkt. 6-2 at 37.] On July 14, 2021, ALJ Miller issued his determination that Claimant was not disabled. *Id.* at 19. The Appeals Council then denied Claimant's request for review on January 5, 2022. *Id.* at 3. Claimant timely filed his Complaint on February 9, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before

continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of November 6, 2017. [Dkt. 6-2 at 21.] At step two, the ALJ found that Claimant had the following severe impairments: "panic disorder, post-traumatic stress disorder (PTSD), and cannabis and alcohol use disorders." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 23. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations. Specifically, in terms of mental limitations, he can only occasionally interact with the public, coworkers, and supervisors, and is restricted to routine and repetitive work tasks, with judgments limited to simple work-related decisions.

*Id.* at 24.

At step four, the ALJ found that Claimant had no past relevant work because, although he had "a wide range of past work activity, including military service," he had "not performed any one occupation at the substantial gainful activity level in any one year." *Id*. at 30. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 31.

## IV. Discussion

Claimant raises one issue on appeal, arguing that the ALJ erred in his treatment of the opinion of Janine Ippolito, Psy.D., who conducted a consultative psychiatric examination of Claimant in March 2020. Dr. Ippolito noted that Claimant was receiving disability benefits through the Veterans Administration ("VA") for mental health issues and was receiving counseling through the VA for post-traumatic stress disorder related to his combat service, as well as for anxiety. [Dkt. 6-9 at 80.] She further noted that Claimant was using alcohol and marijuana to "self-medicate." *Id.* With regard to Claimant's mental status examination, Dr. Ippolito stated that Claimant was "cooperative and his manner of relating/social skills/overall presentation were adequate." *Id.* at 81. Dr. Ippolito concluded as follows:

> MEDICAL SOURCE STATEMENT: The claimant presents as able to understand, remember or apply simple and complex directions and instructions, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and maintain personal hygiene and appropriate attire with no evidence of limitations. He can use reason and judgment to make work related decisions, interact adequately with supervisors, co-workers and the public, and demonstrate awareness of normal hazards and taking appropriate precautions with moderate limitations. He can regulate emotions, control behavior and maintain well-being with moderate to marked limitations. These limitations are due to his emotional distress and current substance use.
>
> Results of the examination appear to be consistent with psychiatric and substance abuse problems and this may significantly interfere with the claimant's ability to function on a daily basis.

*Id.* at 82.

In evaluating Dr. Ippolito's opinion, the ALJ stated the following:

> Dr. Ippolito, the March 2020 psychological consultative examiner, found that the claimant would have moderate-to-marked restrictions to regulate emotions, control behavior, maintain wellbeing. However, she found only moderate restrictions in other areas, such as to use reason and judgment to make work-related decisions; to interact adequately with supervisors, co-workers, and the public; and to demonstrate awareness of normal hazards or to take appropriate precautions. Either no limitations or mild limitations only were reached with regard to other work-related activities (Exhibit 4F). This opinion is somewhat non-specific, in that it does not provide an affirmative statement of what work-related-tasks the claimant can actively perform (see SSR 85-15). However, it is generally persuasive in formulating the above "paragraph B" assessments under Listing 12.00 *et seq.*, from which the residual functional capacity is later derived. As such, this is not a record that contains marked or extreme functional limitations.

[Dkt. 6-2 at 29.] Ultimately, relying on the opinions of the state agency psychological consultants, the ALJ found that, due to his mental impairments, Claimant could "only occasionally interact with the public, coworkers, and supervisors, and is restricted to routine and repetitive work tasks, with judgments limited to simple work-related decisions." *Id.* at 24.

Claimant notes that, in evaluating the "B Criteria," the ALJ found that Claimant had a moderate limitation in adapting or managing himself, and that, as a result, he would "'have a

5

restriction with regard to regulating emotions, controlling behavior, and maintaining well-being.'" [Dkt. 10 at 13] (quoting [Dkt. 6-2 at 24.] Claimant then argues the following:

> In evaluating the RFC, the ALJ did not discuss this specific limitation to regulating emotions, beyond mentioning that Dr. Ippolito had found this limitation; and does not explain how the "moderate" limitation to adapting or managing himself was accounted for. Dkt. 6-2 at p. 28-29, r. 27-28. The ALJ found that, the Plaintiff's RFC was supported by the non-examining review physicians, specifically discounted the Plaintiff's hearing testimony and the VA treatment records but did not discuss why Dr. Ippolito's opinion was not incorporated.

*Id.*

The Undersigned finds no error. The ALJ relied on the opinions of the state agency consultants, who found that Claimant had moderate limitations in interacting with others and adapting or managing himself—specifically in his ability to interact appropriately with the general public, his ability to accept instructions and respond appropriately to criticism from supervisors, his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, his ability to respond appropriately to changes in the work setting, and his ability to be aware of normal hazards and take appropriate precautions—but that Claimant nonetheless "retain[ed] the ability to perform work-related tasks and activities in low contact settings." [Dkt. 6-3 at 7, 9, 23-24.] The consultants reiterated in their narrative explanations that "while [Claimant] exhibits difficulties with social interaction and would likely benefit [from] a low contact work setting he can appropriately engage in basic interactions to meet work related needs" and that Claimant's "ability to adapt or manage oneself may be somewhat reduced but adequate to handle daily work functions." *Id.* at 9, 24.

The ALJ's decision to rely on the state agency consultants' opinions in arriving at an RFC is "a determination we affirm if supported by substantial evidence." *Grotts v. Kijakazi*, 27 F.4th

1273, 1278 (7th Cir. 2022). As the Seventh Circuit has noted, "the regulations consider state agency psychologists . . . to be 'highly qualified and experts in Social Security disability evaluation.'" *Id.* (quoting 20 C.F.R. § 404.1513a(b)(1)). "As with all medical opinions, an ALJ must examine the § 404.1527(c) factors and minimally articulate [his] reasoning for crediting non-treating state agency medical opinions." *Id.*

> In *Grotts*, the Seventh Circuit found that
>
> substantial evidence supports the ALJ's giving great weight to the reports of [the state agency consultants, Drs. Cremerius and Brister]. The ALJ found Dr. Cremerius's opinion consistent with the other evidence of Grotts's social limitations and explained that Drs. Cremerius and Brister saw much of the record, had program knowledge, specialize in mental impairments, and supported their own opinions with explanation. In so doing, the ALJ used the framework of § 404.1527(c) to explain why it gave greater weight to the opinions of Dr. Cremerius and Dr. Brister than to other opinions.

*Id.* The same is true in this case. In evaluating the state agency consultant's opinions, the ALJ found the following:

> Dr. Dekeon, a State agency psychological consultant who reviewed the file in May 2020, opined based upon a review of the record that the claimant would retain the ability to perform work related tasks and activities, in low contact settings (Exhibit 1A). Dr. May, a State agency psychologist at the reconsideration level in August 2020, affirmed the previous assessment (Exhibit 3A). Between the two State agency consultants, the claimant's then-available medical records were discussed. It was noted the claimant had PTSD attacks which kept him away from large crowds or loud noise, but he was also able to complete his activities of daily living and instrumental activities of daily living (ADLs and iADLs) (Exhibit 1A). I find these opinions persuasive, and have incorporated their assessments into the above residual functional capacity. Each State agency consultant is deemed to be an expert for the purposes of medical record review, and knowledge of disability program rules. Each source described specific objective evidence in the file in relation to their own conclusions. Although additional evidence from the VA has been received at the hearing level, I find that this new evidence (Exhibit 13F) shows a continuity of conservative care and largely mental status examination findings, and therefore does not suggest greater restrictions than those previously reached by the two State agency psychological consultants.

[Dkt. 6-2 at 29-30.]

Claimant's argument is based on the fact that the ALJ found Dr. Ippolito's opinion to be "largely persuasive," but did not specifically address how Dr. Ippolito's opinion that Claimant had "moderate to marked limitations"[2] with regard to his ability to regulate emotions, control behavior, and maintain wellbeing were accounted for in the RFC. However, reading the ALJ decision as a whole, the decision adequately articulates the reason for his RFC determination and the substantial evidence that supports it. Dr. Ippolito's findings are largely consistent with those of the state agency consultants, and the ALJ found her opinion to be largely persuasive. To the extent that they were not identical,[3] he chose to rely on the state agency consultants' opinions regarding Claimant's workplace limitations for the reasons he explained in his decision. He did not err in doing so.

---

[2] Claimant states repeatedly in his brief that Dr. Ippolito found a "marked limitation." *See* [Dkt. 10 at 1, 6, 9, 13, 14, and 15]. In fact, she found "moderate to marked limitations" with regard to regulating emotions, controlling behavior, and maintaining well-being. It is, frankly, unclear whether Dr. Ippolito believed Claimant had moderate limitations as to some of these skills and marked limitations as to the other(s), or whether she believed his limitations as to all of them fell somewhere between moderate and marked. The ALJ appears to have interpreted it as the latter, inasmuch as he found that "this is not a record that contains marked or extreme functional limitations" after summarizing Dr. Ippolito's findings. [Dkt. 6-2 at 29.] This interpretation is reasonable.

[3] Claimant does not explain whether he believes that the state agency consultants' finding of limitations in his ability to interact appropriately with the general public, his ability to accept instructions and respond appropriately to criticism from supervisors, his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, his ability to respond appropriately to changes in the work setting, and his ability to be aware of normal hazards and take appropriate precautions do not encompass Dr. Ippolito's finding of limitations in regulating emotions, controlling behavior, and maintaining well-being, or whether he believes the only discrepancy is the consultants' finding of moderate limitations in these areas versus Dr. Ippolito's finding of moderate to marked limitations.

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 5 JAN 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.